`

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

**DANNY R. ROBERTSON and**
**GAY W. ROBERTSON**                                                        **PLAINTIFFS**

**VERSUS**                                      **CIVIL ACTION NO. 2:06cv3KS-MTP**

**J.C. PENNEY COMPANY, INC., D/B/A J.C. PENNEY**
**CARD BANK, N.A., D/B/A J.C. PENNEY CORPORATION, INC.;**
**GE CONSUMER FINANCE, INC.; COLLECTORS TRAINING**
**INSTITUTE OF ILLINOIS, INC.; and JOHN DOE**
**CORPORATIONS A THRU Z**                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Partial Summary Judgment **[#58]** filed on behalf of the plaintiffs.  The court, having reviewed the motion, the response, the pleadings and exhibits on file, the briefs of counsel, and being otherwise fully advised in the premises finds that the motion is well taken in part  and should be granted in part and denied in part.  The court specifically finds as follows:

### FACTUAL BACKGROUND

In May 1978, the plaintiffs, Danny and Gay Robertson opened a credit card account with J.C. Penney.  In December 1999, the plaintiffs' account was acquired by Monogram Credit Card Bank of Georgia ("Monogram").  On February 7, 2005, Monogram merged with GE Capital Consumer Card Company, with the resulting company becoming GE Money Bank (GEMB), which is the current owner of the Robertsons' account that is the subject of this lawsuit.  GE Money Bank is a wholly-

owned subsidiary of defendant GE Consumer Finance, Inc.  The employees now employed by GE Consumer Finance, Inc., were previously employed by another GE entity, GE Capital Corporation, at the time the events in question took place.  The court will refer to all of the GE entities simply as "GE" for convenience.

On October 20, 2004, the plaintiffs received a call from GE regarding their account.  The representative informed Mr. Robertson that $222.22 was owed on the account.  Mr. Robertson paid the entire balance of $222.22 over the phone by debit card, and during that conversation he instructed the representative to close the account.  Robertson was given confirmation number 4598110 to confirm the transaction.  GE, through its 30(b)(6) representative Martha Koehler, now concedes that the Robertsons' account was paid in full on October 20, 2004, and that proof of the Robertsons' payment was contained in contemporaneous account records maintained by GE, and that such gave notice of the payment to every GE employee who accessed the records thereafter.

However, GE did not post the payment to the Robertsons' account.  Beginning four days later on October 24, 2004, the plaintiffs received the first of numerous calls from GE saying that they had a balance on their account.  The second call from a GE representative occurred on October 28, 2004.  Mrs. Robertson told the GE representative that her husband had paid the balance by credit card on October 20, and gave the representative the confirmation number 4598110 that had been provided at the time the payment was made.  Accordingly, the account was routed by the GE representative to "YMP" (the misapplied payments department) for research.  At 5:12 a.m. the next morning, October 29, 2004, another GE employee entered a note into

GE's records indicating that he had reviewed the account and that payment was not posted to the account, such that GE would need proof of payment.  As a result, the GE employee caused the system to send a "CP02 letter" requesting more information from the account holder and closed the work file.

The CP02 letter sent to Mr. Robertson states that GE's "records show that the payment in question has not been credited to your account. Please provide us with a clear photocopy of both sides of your canceled check or money order, or provide other bank verification, such as a bank statement or letter from your bank confirming this payment." In spite of this request, no one from the misapplied payments department followed up with the Robertsons, though the collections department did call them seven times in the next five weeks.

In the midst of this collection activity, the Robertsons called GE, at 8:39 p.m. on November 10, 2004, and once again stated that the account had been paid in full a month earlier, and that the payment had cleared their bank although it had still not been posted to their credit card account.  The GE representative told the Robertsons to fax their bank statement to the unity department.  After this conversation, a GE employee reviewed the notes posted in the Robertsons' account records and saw that their payment was made electronically, so their account was routed to YSP (the speed pay, or electronic payment, department) for additional research on November 19, 2004. Three days later, on November 22, 2004, the speed pay department entered a note in the account records indicating that the plaintiffs needed to contact GE, and that a bank statement was required as additional proof that GE had accepted their payment.  The account records do not, however, indicate that anyone in the speed pay department

ever informed the Robertsons of this.  Instead, the matter was routed back to collections, which, on December 6, 2004, began collection activity again.

After several more calls over the next few days, GE spoke with Mrs. Robertson again at 8:45 a.m. on December 11, 2004.  Mrs. Robertson indicated to the GE employee that she was very much concerned about her account as the payment she made through her debit card was not showing on the account.  Mrs. Robertson also stated that she was undergoing surgery the following Monday, and requested no more phone calls from GE.  The GE representative told Mrs. Robertson to contact customer service to gather information about the documents GE needed to investigate the payment.  Based on Mrs. Robertson's request, the account was given an HVR assignment, indicating a verbal request for no contact from GE.

GE then referred the account to a collection agency, former defendant NCC Business Services, Inc. ("NCC")[1], on March 22, 2005.  NCC spoke to Mrs. Robertson at 8:42 a.m. on March 24, 2005, at which time she informed the representative that they had paid this off in October by debit card.  NCC told Mrs. Robertson it would need some kind of proof, suggested a bank statement, and provided her with a fax number to which she could send a copy.  The next day, March 25, 2005, Mrs. Robertson faxed to NCC a copy of their bank statement showing a payment of $222.22 made to GE on October 20, 2004.  NCC forwarded this information to GE on April 14, 2005.  GE concedes that it received a copy of the bank statement on that date.

On August 30, 2005, more than four months after receiving a copy of the bank

---

[1]  NCC was dismissed by agreed order filed July 18, 2007.

statement, GE referred the account to another collection agency, defendant Collectors

Training Institute of Illinois.  When this new collection effort began, the Robertsons

obtained a copy of their credit report from TransUnion LLC ("TransUnion"), a credit

reporting agency ("CRA"), indicating that their account was past due and had been

charged off as a bad debt in December 2004.  On September 21, 2005, Mrs. Robertson

wrote a letter to TransUnion, Equifax Information Services, LLC ("Equifax"), another

CRA, NCC, and J.C. Penney (at a post office box used by GE).  The letter states that,

> Since October 22, 2004, I have notified JCPenney and their collecting
> agents that [our] JCPenney account was paid in full by credit card on 10/22/2004
> [sic] . . . .

> Please consider this letter notice, pursuant to the Fair Credit Reporting
> Act, that JCPenney and its collecting agents including but not limited to NCC
> Business Services, Inc. [are] falsely reporting that account #2165638814
> GEMB/JCP was not paid and was a charge off for both Danny and Gay
> Robertson. I repeat that this account was paid in full in October of 2004.

> I am requesting that both TransUnion and Equifax send the appropriate
> notices to JCPenney and NCC Business Services, Inc., requiring them to
> investigate and correct the incorrect credit information.

GE admits that it received this letter on September 26, 2005, but that there was

no internal "review and handling" of the letter.  As a result of receiving the letter,

TransUnion sent the required notice under the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. §§1681 to 1681x, in the form of an automated consumer dispute verification

form ("ACDV"), to GE on September 29, 2005.[2]  The TransUnion ACDV listed an

---

[2]  The FCRA requires a CRA that receives notice of a dispute from a consumer to provide
notification of the dispute to the person who provided the item of information that is in dispute. See 15
U.S.C. §1681i(a)(2)(A). After receiving notice from the CRA of a dispute with regard to the completeness
or accuracy of the information provided to the CRA, the person providing the information must then,
among other things, conduct an investigation with respect to the disputed information and report the
results of the investigation to the CRA. See 15 U.S.C. §§1681s-2(b)(1). These actions must be taken

"FCRA Response Due Date" of October 23, 2005.  GE sent the form back to TransUnion on September 29, 2005, the same day that it received the ACDV from TransUnion.

GE received a second ACDV from Equifax on October 4, 2005.  As to the nature of the dispute, the Equifax ACDV indicated on its face that the "CONSUMER CLAIMS THAT THIS ACCOUNT WAS PAID IN FULL LAST OCTOBER 22, 2004 AND NEVER WAS A CHARGE OFF."  The Equifax ACDV gave an "FCRA Response Due Date" of October 20, 2005.  GE returned the form the next day, October 5, 2005, again reporting that the account had properly been reported as a charge off, despite the information in GE's files showing that the account had been paid in full.

The plaintiffs filed this action on January 4, 2006.  After suit was filed, Ms. Koehler was assigned to review the Robertsons' account on behalf of GE.  Ms. Koehler began reviewing the account on January 25, 2006, including the October 20, 2004 entry giving "the date of the payment, the amount of the payment and the confirmation number" (Koehler Dep. at 85), and quickly determined that the Robertsons' credit had, in fact, been inaccurately reported by GE and continued to be inaccurately reported even after receipt of the ACDVs by GE (Koehler Dep. at 9-13).  Ms. Koehler then contacted the electronic payments department to have them determine where the October 20, 2004 payment was misapplied and to properly apply it to the Robertsons'

---

before the expiration of the 30-day period, beginning on the date when the CRA received notice of the dispute from the consumer, within which the CRA must conduct its own reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information. 15 U.S.C. §§1681i(a)(1)(A), 1681s-2(b)(2). GE acknowledges that its receipt of an ACDV from aCRA creates a responsibility on its part "to cooperate with the [CRAs] in resolving disputes, by conducting reasonable investigations and responding accordingly."

account. (Koehler Dep. at 85). As a result, the Robertsons' payment was posted to their account on February 13, 2006.

This action was brought on behalf of the plaintiffs for actual and punitive damages for alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681n, 1681*o*, 1681s-2(b), and the Fair Debt Collection Act, 15 U.S.C. § 1692, *et seq*. This court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. The court has supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence

is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.

*Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## FAIR CREDIT REPORTING ACT

Congress enacted the FCRA to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4) (2003).  The Act's creation was prompted by "congressional concern over abuses in the credit reporting industry ." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995).  "In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual customer and the nation's economy as a whole."  *Philbin v. Trans Union Corp.* 101 F.3d 957, 962 (3rd Cir.1996) (citing 15 U.S.C. § 1681(a)(1), (3)).

### Negligent Noncompliance with the FCRA

Section 1681*o*[3] provides statutory authority for civil liability for negligent noncompliance with the FCRA.  Any person who is negligent in failing to comply with a

---

[3]  That section provides in pertinent part:

Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of-

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

requirement of the FCRA is liable for any actual damages sustained by the consumer. 15 U.S.C. § 1681*o*(a).  *See also Thompson v. San Antonio Retail Merchant's Ass'n*, 682 F.2d 509, 512-13 (5th Cir. 1982).  Further, '[t]he standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances."  *Id.* at 513 (citing *Bryant v. TRW, Inc.*, 487 F.Supp. 1234, 1242 (E.D.Mich.1980)).

The plaintiffs have moved for partial summary judgment only as to GE on the issues of negligent and willful failure to accurately investigate its erroneous reports to the CRAs regarding the unpaid status of the plaintiffs' account with J.C. Penney after receipt of the ACDVs indicating a consumer dispute.  Under Section 1681i(a) of the Act, if a consumer notifies a consumer reporting agency of a dispute regarding the completeness or accuracy of information contained in the consumer's credit report, the agency is required to reinvestigate the disputed information. 15 U.S.C. § 1681i(a).  As part of its reinvestigation, the agency must notify the furnisher of the credit information of the dispute.

Although the FCRA does not define a "furnisher of credit information," case law defines the term to mean an entity that transmits information to a credit reporting agency concerning a particular debt owed by a customer. *Thomasson v. Bank One, Louisiana, NA.*, 137 F. Supp. 2d 721, 723 (E.D. La. 2001).  Section 1681s-2(b)(1) of the FCRA requires such a furnisher to conduct an investigation regarding a consumer dispute and to report its findings accordingly:

> After receiving notice pursuant to section 1681(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall -

(A) conduct an investigation with respect to disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2);

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information....

15 U.S.C. § 1681s-2(b)(1).

Defendant GE defends against the plaintiffs' motion by first asserting that the plaintiffs have no claim against GE Consumer Finance because it is not a furnisher of credit information. According to the defendant, since the plaintiffs admit that they are suing GE Money Bank and GE Consumer Finance only as furnishers of credit information under § 1681 s-2(b), and although employees of GE Consumer Finance responded to the ACDVs, they did so on behalf of GE Money Bank. Therefore, GE Money Bank is the entity that received the ACDVs, the entity that owns the plaintiffs' account, and the responding entity to the ACDVs making GEMB the furnisher of credit information, not GE Consumer Finance. GE further contends that to the extent that GE

Consumer Finance is deemed GE Money Bank's agent, GE Consumer Finance is an agent for a disclosed principal — GE Money Bank — so it has no independent liability under the FCRA.

As the plaintiffs recognize, "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958). In this action, the Robertsons' claim is for tortious activity on the part of GE Consumer Finance and GEMB in willfully or negligently failing to carry out their statutory responsibility to conduct a reasonable investigation of the disputed information reported about the Robertsons' account. It is black-letter agency law that "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." Id. § 343; see also id. § 350 ("An agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion."). Thus, GE Consumer Finance can be liable to the plaintiffs if it participated, as alleged, directly in the willful or negligent failure to conduct a reasonable investigation with respect to the incorrect information reported about the Robertsons' account. However, the defendant has not moved for summary judgment and that issue is not fully ripe for decision.

GE next asserts that it cannot be liable on the TransUnion ACDV because this ACDV did not call into question the Robertsons' dispute that their account was paid. This argument is simply without merit. The TransUnion ACDV stated that the Robertsons' account status was disputed by the consumer and asked for a verification. GE was listing the account as a charge off. Clearly, this was an incorrect status and the

-13-

fact that the Robertsons' account file contained several entries regarding the disputed nature of this account would have been discovered upon any reasonable attempt to verify same.

Defendant GE's next argument is that plaintiff Danny Robertson has no FCRA claim because he was not named in the ACDVs and, thus, "[n]o incorrect information was reported regarding Danny Robertson."  The plaintiffs admit that the ACDVs only list Gay Robertson as the person who reported the dispute because it was she who sent the September 21, 2005 letter notifying the CRAs that it was being "falsely report[ed] that account #2165638814 GEMB/JCP was not paid and was a charge off for both Danny and Gay Robertson" when, in fact, "this account was paid in full in October of 2004." (Koehler Dep. Exs. 6, 7, 8, Bates stamp GEMB 00135 to GEMB 00140.) However, the ACDVs also indicated that the disputed information concerned GEMB account number 2165638814, which referred to a J.C. Penney charge account that had been jointly held by the Robertsons for many years.  The court agrees, that since the incorrect information reported by the defendants concerned that joint account, it clearly affected Danny's credit as well as Gay's, such that he, too, is a "consumer" with standing to bring the FCRA claims.

GE next argues that it is a fact issue whether the defendants conducted the reasonable investigation required of them after their receipt of the Equifax ACDV.  The Act does not provide any indication as to the level of investigation required under Section 1681s-2(b)(1).  Section 1681s-2(b)(1)'s investigation requirement for furnishers, however, "is analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained

in his credit report" and, therefore, furnishers of credit are required to conduct a reasonable investigation. *Bruce v. First U.S.A. Bank, National Association*, 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000).

This requirement to conduct a reasonable investigation to determine whether disputed information in a consumer credit report can be verified is widely recognized. *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 n.2, 431 (4th Cir. 2004) (collecting cases); accord *Lang v. TCF Nat'l Bank*, No. 07-1415, 2007 WL 2752360, at *1 (7th Cir. Sept. 21, 2007); *Johnson v. MBNA Am. Bank, N.A.*, No. Civ. 1:05CV00150, 2006 WL 618077, at *5 (M.D.N.C. Mar. 9, 2006); *DiPrinzio v. MBNA Am. Bank, N.A.*, No. 04-872, 2005 WL 2039175, at *10 (E.D. Pa. Aug. 24, 2005). A reasonable investigation "clearly requires some degree of careful inquiry by creditors" and more than just a "superficial" inquiry. *Johnson*, 357 F.3d at 430, 431. However, whether such a "reasonable" investigation has been conducted is generally a question of fact for the jury. See *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368-69 (5th Cir. 2001).

GE received the TransUnion ACDV on September 29 and returned it the same day with only a verification of identity information. There appears to have been no investigation of the disputed status of the claim at all. The same is true of the Equifax ACDV received on October 4 and returned on October 5. This ACDV stated that the plaintiffs disputed the debt and contended that it had been paid a year previously. Both of these ACDVs followed a detailed dispute letter sent by Mrs. Robertson to the CRAs and to GE, which GE has acknowledged receiving.

The summary judgment record before the court demonstrates that GE's own

computer records, which were accessible to any GE employee, show that the Robertsons paid the account in full by telephone at 6:55 p.m. on October 20, 2004 using a Visa card.  (Koehler Dep. at 43-46, 53 & Ex. 4, Bates stamp GEMB 00066, GEMB 00068, GEMB 00069.)  The records also show that the GE representative who took the payment provided the Robertsons with confirmation number 4598110 to confirm receipt of their payment at that time.  (Koehler Dep. Ex. 4, Bates stamp GEMB 00068.)

Nevertheless, in spite of having information at their access to clearly verify that the plaintiffs' had paid this debt, GE employees responded to the TransUnion and Equifax ACDVs that the plaintiffs' account was properly charged off for nonpayment. This response, in the face of the statutory requirement to perform a reasonable investigation, was, at the very least, negligence on the part of the GE employees. While this finding is one generally left to the province of the trier of fact, in this case the court finds that no reasonable juror could conclude otherwise but that GE's "investigation" of the dispute noted in the ACDVs from both TransUnion and Equifax was not "reasonable" as a matter of law.  Thus, there being no disputed issue of material fact in this regard, the plaintiffs are entitled to summary judgment on the issue of negligence.


**Willful Noncompliance with the FCRA**

In order to show willful noncompliance under § 1681n of the FCRA, the consumer must show that the defendant acted in "reckless disregard of [its] statutory

duty." *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2208 (2007),[4] ("[R]eckless

disregard of a requirement of [the] FCRA would qualify as a willful violation within the

meaning of ' 1681n(a)." *Id.* at 2216).

The plaintiffs assert that while it may be unusual to grant summary judgment

where a party's intent is at issue, here the question of whether GE acted in reckless

disregard for its duty under the FCRA to conduct a reasonable investigation of the

Robertsons' account is measured by an objective standard, so no examination of GE's

subjective intent is required.  *See Safeco*, 127 S. Ct. at 2215 (recklessness is "conduct

violating an objective standard: action entailing 'an unjustifiably high risk of harm that is

either known or so obvious that it should be known.'" (quoting *Farmer v. Brennan*, 511

U.S. 825, 836 (1994))).  Thus, in order to establish a reckless violation, the plaintiffs

must prove that GE acted in a manner that made it highly probable that harm would

follow.  *See id.*  The risk of harm must be substantially greater than the risk associated

with actions that are merely careless.  *Id.*

After a review of the present record, the court is of the opinion that there are

material fact issues which need to be resolved by the trier of fact on the willfulness of

the noncompliance of the GE defendants with the FCRA statutes.  Therefore, summary

judgment on willfulness is inappropriate.

---

[4] *Safeco* changed the standard previously applied in the Fifth Circuit, pursuant to which a
defendant could have been found in willful noncompliance under § 1692n only if it "'knowingly and
intentionally committed an act in conscious disregard for the rights of others.'"  *Stevenson v. TRW Inc.*,
987 F.2d 288, 293-94 (5th Cir. 1993) (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986), cert.
denied, 483 U.S. 1022 (1987)); *see also Harris v. Equifax Info. Servs., LLC*, No. C A 606CV-01810-GRA,
2007 WL 1862826, at *2 (D.S.C. June 26, 2007) ("In Safeco, the Supreme Court unequivocally resolved
this circuit split, holding that willfulness under 15 U.S.C. § 1681n(a) covers a violation committed in
reckless disregard of Plaintiff's rights.").

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Partial Summary Judgment **[#58]** filed on behalf of the plaintiffs is granted as to the allegations of negligent violation of the FCRA but denied as to the allegations of willful violation of the FCRA.

SO ORDERED AND ADJUDGED this the 4th day of March, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE